### Roger Marchand v. Addison Probate Court et als

[186 A.2d 85]

September Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed November 7, 1962

*Gerard Trudeau* for the petitioner.

*Lisman & Lisman* for the Addison Probate Court.

*Conley & Foote* for John F. Benjamin, Jr.

*William S. Burrage* for the Selectmen and Overseer of the Poor of the Town of Middlebury.

**Hulburd, C. J.** The petitioner comes to us seeking a writ of prohibition as provided for by 12 V.S.A. §4041 *et seq.* The petitionees have met this application with a motion to dismiss. For the purposes

of considering this motion, it is necessary that we assume that the facts are as the petitioner has alleged them to be. We turn to them, therefore, to learn what basis, if any, there may be for the issuance of the writ.

The petitioner states that he is the plaintiff in an action at law pending in Addison County Court, having docket number 9360, and that this action was commenced by the issuance of a body writ against one John F. Benjamin, Jr., which was served on May 25, 1962. Thereafter, on July 13, 1962, Benjamin was committed to the Addison County jail for want of sureties for his appearance in the pending action at law. Subsequently, but on the same day, the selectmen and overseer of the Town of Middlebury brought a petition to the Probate Court for the District of Addison seeking to commit Benjamin to the Vermont State Hospital at Waterbury, Vermont as an indigent insane person, dangerous to himself and others. A copy of this petition to the probate court has not been made a part of the application for a writ of prohibition, nor was it incorporated into the same by reference as an exhibit, and in fact is not to be found in the files of this case unless it can be said to be brought into it as an appendage to the petitionees' motion to dismiss in the companion case of *Langrock* v. *Addison Probate Court, post,* pursuant to a request by the petitionee in its motion in this case. In response to the petition of the selectmen and overseer, the probate court instituted a court of inquiry concerning Benjamin, to be held on July 23, 1962. Moreover, pending this hearing, upon the certificate of two physicians, the probate court issued a temporary order of removal for Benjamin with which he was removed from the Addison County jail to the Vermont State Hospital in Waterbury, Vermont, where he is now confined. The order of removal under which Benjamin was transferred to the State Hospital has not been set forth in the petitioner's application for a writ of prohibition nor incorporated in it by reference as an exhibit, and is not to be found in the files of this case except that the petitionee in its motion to dismiss has attached it as appendage thereto in the same manner as hereinbefore brought out with regard to the petition for a court of inquiry.

When the day for the court of inquiry in probate court arrived, that is, July 23, 1962, counsel for the petitioner, Roger Marchand, attempted to be heard in probate court. He sought to appear "for the

sole and express purpose of objecting to the assumption of jurisdiction over the said John Benjamin, Jr. by the said probate court . . . but was not allowed by the said court to appear for and in behalf of the said Roger Marchand in the proceeding then pending before said Court, it being the position of said Probate Court that this petitioner had no standing or right to appear before said Court and object to the matter then pending before it." The probate court did allow petitioner's counsel to appear as an *amicus curiae*. Even with his status so limited, counsel for the petitioner objected to the probate court taking jurisdiction in the insanity proceedings before it on the ground that it lacked jurisdiction "over the subject matter and person." As a result of all this, the probate court recessed the hearing to give itself an opportunity to consider what had been presented before it. It was to have resumed proceedings on August 10, 1962. On August 9, 1962, the petitioner brought his complaint for a writ of prohibition. It is to be borne in mind that at the time the petitioner was making his objections in probate court, Benjamin had already been committed to the State Hospital under a temporary order of removal ten days previously. This removal of Benjamin, the petitioner alleges, "from the confines of the Addison County jail while he was lawfully confined therein under and by virtue of an order and mittimus issued by a court with jurisdiction superior to that of the Probate Court, constitutes an abuse of process and illegal assumption of jurisdiction on the part of the Probate Court." Finally, the petitioner alleges that the petition for commitment of Benjamin "was brought to said Probate Court for ulterior motives and was instituted for the purpose of aiding and abetting the said John Benjamin, Jr. to escape from the confines of the Addison County jail, while he was lawfully confined therein, it being the ulterior purpose or motive of the parties that were instrumental in bringing this petition to ultimately remove the said John Benjamin, Jr. not only from Addison County jail to the Vermont State Hospital in Waterbury, Vermont, but to remove him from this jurisdiction, so as to defeat the petitioner's pending cause of action at law before the Addison County Court."

Petitionees' motion to dismiss the complaint for a writ of prohibition is based on several grounds. One of these is that Roger Marchand "has no standing to bring this complaint." Another is that the "complaint for writ of prohibition, based on lack of juris-

diction in the probate court" is ill-founded. In other words the petitionees claim that on the face of the proceedings it is manifest that the probate court had jurisdiction. This ground takes us to the heart of the whole matter, and we would like to turn directly to a consideration of it. It brings us face to face with the question: can a person who has been committed to the keeper of a jail for safe-keeping by reason of his failure to find sureties in connection with a civil action pending in county court, be thereafter proceeded against as an insane person and removed from jail to the State Hospital at Waterbury? The petitioner claims not, and rests his right to have a writ of prohibition squarely on this proposition. Indeed, the petitioner would not only have us prohibit the probate court from going forward with its proceedings but, in addition, would have us undo what the probate court has done thus far and bring it about that Benjamin (who has tentatively been adjudged insane, and committed to the State Hospital on a temporary order of removal) should, in some manner, be returned to the county jail and left there. This is because, the petitioner asserts, the Addison County Court, being the first to obtain jurisdiction with respect to Benjamin, continues to have exclusive and superior jurisdiction.

Our inquiry, then, is whether this conclusion is sound. This is not a case in which one court is attempting to exercise the jurisdiction which another court has already assumed. There is nothing competitive about the jurisdiction of the two courts involved. The questions before the two courts are entirely distinct. One concerns civil liability; the other the matter of insanity. As to the matter of insanity, the probate court is not an inferior court. It is the court to which the legislature has seen fit to entrust the primary responsibility as to the commitment to the State Hospital of insane persons. There are, to be sure, certain special instances where authority has been vested in this connection in others, but the main and general authority has been given to the probate courts. It is therefore not to be considered as an inferior court in this regard. The question arises: does the probate court by acting in its own sphere in any way oust the county court of its jurisdiction? The answer is that there would be nothing to prevent the litigation in county court from moving to judgment regardless of the probate court's action. The real cause of the petitioner's concern is not that the county court has lost juris-

diction in the civil case, but that it is going to lose its hold on the defendant, and so the problem of collecting any judgment he may obtain may be rendered more difficult. The ulterior motives which the petitioner ascribes to certain parties are not ascribed by him to the probate court. He conceives of the writ of prohibition as a means to relieve against an alleged wrong by an adverse party. But it is not a proceeding between private litigants at all. *Carpentertown Coal & Coke Co.* v. *Laird,* 360 Pa. 94, 61 A.2d 426. Rather it is, in effect, a proceeding between two courts, a superior and inferior. 73 C.J.S. Prohibition §2 at page 13. As we have seen, there is no basis for claiming that the probate court, when acting in the sphere intrusted to it, is an inferior court or that it is usurping any authority which the county court has to determine a civil action involving one of the parties.

■ There can be no question, then, but that the probate court had jurisdiction of the subject matter with which it was dealing. If there is any uncertainty as to the probate court having jurisdiction of the person, the subject himself, who has been made a party in the present proceeding, has not sought to raise the point. Since he has accepted the jurisdiction of the probate court, little room is left for a third party to assail the jurisdiction as to the person. Such jurisdiction has already been yielded to the court.

■ How is it possible, then, to argue against the jurisdiction of the probate court? If there is an argument, it is to be found in the claim that the directions of the county court and of the probate court, contained in the mittimus and order of removal respectively, expose the keeper of the Addison County jail to incompatible commands. Obviously the law should not be such as to place those acting under it in an actual dilemma, and jurisdiction is to be limited and allocated accordingly.

■ If, in fact, the commands of the two courts are in opposition to one another, we have no hesitancy in holding that the public interest is such in dealing with insane persons that the private interest of one seeking to hold a person in jail on mesne process must yield to the paramount interest of the public. In the same way, a person being held on mesne process on a plaintiff's writ would not be beyond the reach of the State if it should develop that he was wanted for prosecution for murder or other felony. So, in our present case, the probate

court is the court of superior jurisdiction for the purposes of what it was doing.

We think from what we have said it is clear that a writ of prohibition ought not to issue against the probate court and that the motion to dismiss the application should be granted. In addition to the reasons already stated, there are other grounds upon which the Court, in its discretion, might well decline to grant the writ. It would serve no purpose to set them forth here, since this case has been argued on the petitionees' motion to dismiss. The court of inquiry proceedings, which have been interrupted by the temporary order in this case, should resume and further proceedings be had as required by law. If Benjamin is not insane, as the petitioner seems to infer by alleging "ulterior motives," the sooner the probate court has a chance to pass on the ultimate question of sanity, the better it should be for the furtherance of justice. If the petitioner was seeking by a writ of prohibition to thwart a move to get Benjamin out of jail, the petitioner's action was futile and late when brought (August 9, 1962) since Benjamin had been committed to the State Hospital on a temporary order of removal on July 13, 1962. But how, the petitioner may persist, in the event that Benjamin is eventually adjudged sane—how is he to be put back in jail? We can only answer: certainly not through a writ of prohibition.

*The petition for a writ of prohibition is dismissed. Let the court of inquiry proceedings resume.*